IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| DONNA KAISER AND STEVEN KAISER,<br><br>        Plaintiffs,<br>v.<br><br>C.R. BARD, INC., Pelvic Repair Systems Products Liability Litigation,<br><br>        Defendant. | Case No. 4:12-cv-862<br><br>COMPLAINT<br>AND JURY DEMAND |

Plaintiffs Donna Kaiser and Steven Kaiser, for their Complaint against Defendant C.R. BARD, INC. state as follows:

**PARTIES**

1.      Plaintiffs Donna Kaiser and Steven Kaiser are residents of the State of Florida. At all times material hereto, they were and are married. All references herein to "Plaintiff" shall refer to Plaintiff Donna Kaiser.

2.      Defendant C. R. BARD, INC. ("BARD") is a New Jersey corporation with its principal place of business located at 730 Central Ave, New Providence, NJ. All acts and omissions of BARD as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

3.      At all times relevant, BARD was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, advertising, and delivering, and/or introducing into interstate commerce throughout the United States and in the State of Missouri, either directly or indirectly through third parties, subsidiaries or related entities, pelvic

mesh products with the brand names, *inter alia,* Avaulta, Faslata, Pelvicol, PelviSoft, and/or Pelvitex (herein after referred to as "Pelvic Mesh Products").

4. At all times mentioned herein, Defendant acted, by and through its agents, representatives and employees who acted within the scope and course of their agency and employment.

5. At all relevant times, the Defendant, C.R. Bard, was and still is a foreign corporation authorized to do business in the State of Missouri.

6. At all times hereinafter mentioned, upon information and belief, the Defendant, C.R. Bard, was and still is a business entity actually doing business in the State of Missouri.

7. At all times hereinafter mentioned, the Defendant, C.R. Bard, is engaged in the business of designing, manufacturing, advertising, marketing, and selling Pelvic Mesh Products, and in pursuance of this business, transacts business within the State of Missouri and contracts to provide goods and services in the State of Missouri.

8. At all times hereinafter mentioned, upon information and belief, the Defendant, C.R. Bard, regularly does and solicits business and engages in a persistent course of conduct in the State of Missouri, deriving substantial revenue from goods and products consumed in the State of Missouri.

9. At all times hereinafter mentioned, upon information and belief, the Defendant, C.R. Bard, expects or should reasonably expect its acts to have consequences in the State of Missouri and derives substantial revenue from interstate or international commerce.

## JURISDICTION AND VENUE

10. Jurisdiction exists over this matter pursuant to 28 U.S.C. Section 1332, in that Plaintiffs are citizens and residents of the state of Florida; the Defendant, C.R. Bard, is

incorporated in business in the State of New Jersey; and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

11. This Court has jurisdiction over Defendant because Defendant is licensed to do business in all states of the United States of America, including the State of Missouri. At all relevant times, Defendant was engaged in the design, manufacture, production, testing, study, research, inspection, mixture, labeling, marketing, advertising, sales, promotion , and/or distribution of Pelvic Mesh Products for ultimate sale and/or use in the United States of America, including the State of Missouri, as well as in various foreign jurisdictions. Defendant is thus amenable to the jurisdiction of this Court.

12. Venue is proper pursuant to 28 U.S.C. Section 1391 in that jurisdiction is founded only on diversity of citizenship, and Defendant is subject to personal jurisdiction in the Judicial District of the Western District of Missouri.

## FACTUAL ALLEGATIONS

13. At all times relevant herein, BARD was and is engaged in the business of designing, manufacturing, marketing, packaging, labeling, and selling medical devices, including its Pelvic Mesh Products used to treat pelvic organ prolapse and stress urinary incontinence.

14. A pelvic organ prolapse (POP) occurs when a pelvic organ, such as ones bladder, drops ("prolapses") from its normal position and pushes against the walls of one's vagina. This can happen if the muscles that hold ones pelvic organs in place become weak or stretched from childbirth or surgery. More than one pelvic organ can drop at the same time. Organs that can be involved in a pelvic organ prolapse include the bladder, the uterus, the bowel and the rectum.

15. Stress urinary incontinence (SUI) is a type of incontinence caused by leakage of urine during moments of physical stress.

16. It is well known in the medical community that the flexibility of a pelvic mesh is key to determining whether a person implanted with device will suffer serious adverse effects, including erosion. Indeed, "more flexible slings seem to adhere and conform to the underlying tissues better than a stiffener sling." Afonso, J., et al., Mechanical properties of polypropylene mesh used in pelvic floor repair. Int Urogynecol J Pelvic Floor Dysfunt. 2008 vol. 19 (3) pp. 376.

17. According to Afonso, J, et al., the Bard Avaulta mesh "shows high tensile and flexural stiffness values". Afonson, J. et al., pp. 380. In other words, the Avaulta mesh is stiff, and it is this stiff characteristic that has been linked to an increased incidence of complications.

18. In October 2008, the FDA issued a warning to consumers and medical providers regarding complications associated with the placement of mesh through an incision made in the wall of the vagina. The most frequent complications included erosion through the vagina, infection, pain, urinary problems and recurrence of the prolapse and/or incontinence.

19. On or about July 10, 2008, Plaintiff underwent a surgical procedure to treat vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele, and during the course thereof, Plaintiff's physicians implanted Defendant's Pelvic Mesh Product.

20. Defendant's Pelvic Mesh Product implanted in Plaintiff was designed, manufactured, labeled, tested, distributed, advertised, marketed, promoted and/or sold by Defendant to be used by surgeons to treat vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele and was further represented by BARD to be an appropriate and suitable product for such purpose.

21. At all times, the Pelvic Mesh Products that were implanted in Plaintiff were being used for the purposes that Defendants marketed the Pelvic Mesh Products.

22. After and as a result of the implantation of the Pelvic Mesh Products, Plaintiff suffered serious bodily injuries, including, but not limited to, extreme pain, erosion of her internal bodily tissue, dyspareunia, and other injuries similar to the ones described in the FDA's Public Health Advisory of October 20, 2008.

23. These injuries would not have occurred but for the defective nature of the product implanted and/or Defendant's wrongful conduct.

24. As a result of having the Pelvic Mesh Products implanted into her, Plaintiff has experienced significant mental and physical pain and suffering, has required and/or will require additional surgeries and medical treatments and has sustained permanent injury.

25. As a result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiff was injured in her health, strength, and activity, sustaining injury to her person, all of which injuries have caused and will continue to cause her severe mental and physical pain and suffering disability, impairment, loss of enjoyment of life, inability to engage in chosen and necessary activities.  Plaintiff is informed and believes, and alleges thereon, that such injuries will result in some permanent disability to her person.

26. As a further result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiff was required to and did employ health care providers and incurred, medical, hospital and incidental expenses; further, Plaintiff is informed and believe, and allege thereon, that Plaintiff will be required to incur additional medical, hospital, and incidental expenses thereto, all according to proof.

27. Defendant's failure to document or follow up on the known defects in its product, and concealment of known defects, constitutes fraudulent concealment that equitably tolls applicable statutes of limitation.

28.     Defendant is estopped from relying on the statute of limitations defense because Defendant actively concealed the defects, suppressing reports, failing to follow through on FDA notification requirements, and failing to disclose known defects to physicians. Instead of revealing the defects, Defendant continued to represent its Pelvic Mesh Products as safe for their intended use.

29.     Defendant is and was under a continuing duty to disclose the true character, quality, and nature of risks and dangers associated with its Pelvic Mesh Product. Because of Defendant's concealment of the true character, quality and nature of their Pelvic Mesh Product, Defendant is estopped from relying on any statute of limitations defense.

30.     Defendant furthered this fraudulent concealment through a continued and systematic failure to disclose information to Plaintiff, physicians and the public.

31.     Defendant's acts before, during and/or after the act causing Plaintiff's injury prevented Plaintiff from discovering the injury or cause thereof.

32.     Defendant's conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendant must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## FIRST CAUSE OF ACTION

## STRICT PRODUCT LIABILITY - FAILURE TO WARN

33.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

34.     Defendant manufactured, sold and/or distributed the Pelvic Mesh Products to Plaintiff to be used for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele.

35. At all times mentioned herein, the Pelvic Mesh Products were and are dangerous and presented a substantial danger to patients who were implanted with the Pelvic Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the Pelvic Mesh Products posed to pelvic reconstruction patients because its uses were specifically promoted to improve the health of such patients. The Pelvic Mesh Products were used in a way reasonably foreseeable to Defendant by Plaintiff. Defendant failed to provide warnings of such risks and dangers to Plaintiff as described herein.

36. As a result of the implantation of the Pelvic Mesh Products Plaintiff suffered debilitating injuries, including, but not limited to, mesh erosion, hardening, chronic pain, vaginal extrusions, distended abdomen, dyspareunia, and recurrent incontinence leading to the need for dangerous and serious vaginal surgery.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY

37. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

38. The Pelvic Mesh Products were manufactured and/or supplied by the Defendant, and were placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with its design of formulation.

39. Alternatively, Pelvic Mesh Products manufactured and/or supplied by Defendant were defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions, in that when they were placed in the stream of commerce, they were unreasonably dangerous, more dangerous than an ordinary consumer

7

would expect, and more dangerous than other forms of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele repair.

40. As a result of the defective unreasonably dangerous condition of these Pelvic Mesh Products manufactured and/or supplied by Defendant, Plaintiff was caused to suffer the herein described injuries and damages.

41. Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by Pelvic Mesh Products.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

42. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

43. Defendant and its representatives were manufacturers and/or distributors of Pelvic Mesh Products. At all times herein, Defendant had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

44. Defendant breached its duty to properly manufacturer, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and see the aforesaid Pelvic Mesh Products, as set forth herein.

45. As a result of Defendant's breach of their duty to Plaintiff, Plaintiff suffered injuries as set forth herein.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

46. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

8

47. Defendant impliedly warranted that the Pelvic Mesh Products, which Defendant designed, manufactured, assembled, promoted and sold to Plaintiff, were merchantable and fit and safe for ordinary use.  Defendant further impliedly warranted that its Pelvic Mesh Products were fit for the particular purpose of correcting vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele.

48. Defendant's Pelvic Mesh Products were defective, unmerchantable, and unfit for ordinary use when sold and unfit for the particular purpose for which they were sold, and subjected Plaintiff to severe and permanent injuries.  Therefore, Defendant breached the implied warranties of merchantability and fitness for a particular purpose when its synthetic mesh system was sold to Plaintiff in that the Pelvic Mesh Products are defective and eroded and caused dense scarring and otherwise failed to function as represented and intended.

49. As a result of Defendant's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff has sustained and will continue to sustain the injuries and damages described herein and is therefore entitled to compensatory damages.

50. After Plaintiff was made aware that Plaintiff's injuries were a result of the aforesaid Pelvic Mesh Products, Defendant had ample and sufficient notice of the breach of said warranty.

## FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

51. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

52. Defendant expressly warranted to Plaintiff and/or her authorized agents or sales representatives, in publications and other communications intended for medical patients and the

general public that the defective Pelvic Mesh Products were safe, effective, fit and proper for their intended use.

53.     Plaintiff and Plaintiff's physicians reasonably relied upon the skill and judgment of Defendant, and upon said express warranty, in using the aforesaid product.  The warranty and representations were untrue in that the product caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use in which it was intended and caused Plaintiff to sustain damages and injuries herein alleged.

54.     As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendant had ample and sufficient notice of the breach of said warranty.

## SIXTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

55.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in this Complaint.

56.     At all relevant times herein, Defendant represented to Plaintiff and Plaintiff's physicians that the Pelvic Mesh Products were safe to use to correct vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele, knowing that the Pelvic Mesh Products were defective and capable of causing the injuries described herein.

57.     The Defendant made the aforesaid representations with no reasonable ground for believing them to be true when Defendant's own data showed the Pelvic Mesh Products to be defective and dangerous when used in the intended manner.

58.     The aforesaid representations were made to the physician(s) prescribing the Pelvic Mesh Products prior to the date it was prescribed to Plaintiff and used by Plaintiff's physicians with the intent that Plaintiff and Plaintiff's physician(s) rely upon such misrepresentations about

the safety and efficacy of the Pelvic Mesh Products.  Plaintiff and Plaintiff's physicians did reasonably rely upon such representations that the aforesaid product was safe for use to correct vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse, cystocele and/or rectocele.

## SEVENTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

59. Plaintiffs repeat and reallege all allegations contained in all paragraphs above as if fully set forth herein.

60. As a direct and proximate result of Defendant's negligence and conduct, as detailed above, Plaintiff Steven Kaiser was caused to lose the consortium and society of his spouse, Plaintiff Donna Kaiser.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

1. For general damages in a sum within the jurisdiction of this Court;
2. For medical, hospital, and incidental expenses, according to proof;
3. For loss of earnings and for loss of earning capacity, according to proof;
4. For costs of suit;
5. For such other relief as the Court deems just and proper.

Dated: July 6, 2012	By: /s/ Jeffrey M. Kuntz
			Thomas P. Cartmell		MO #45366
			Jeffrey M. Kuntz		MO #52371
			WAGSTAFF & CARTMELL, LLP
			4740 Grand Ave., Ste. 300
			Kansas City, MO 64112
			816-701-1100
			816-531-2372 (fax)
			**Attorneys for Plaintiffs**

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues.

			By: /s/ Jeffrey M. Kuntz
			Jeffrey M. Kuntz
			WAGSTAFF & CARTMELL, LLP
			**Attorneys for Plaintiffs**